

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CENTRAL STATES, SOUTHEAST AND )
SOUTHWEST AREAS PENSION FUND, and )
HOWARD McDOUGALL, as Trustee, )
                                         )
       Plaintiffs, )
                                         )    No. 09 C 5216
   v. )
                                         )    The Honorable William J. Hibbler
WASTE MANAGEMENT OF MICHIGAN, INC., )
a Michigan corporation, )
                                         )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund"), a multiemployer pension fund, brought this suit to enforce the requirements of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1145, claiming that Defendant Waste Management of Michigan ("Waste Management") breached an agreement to make contributions to the Pension Fund. The Pension Fund has since moved for summary judgment. Waste Management now moves the Court to order discovery pursuant to Federal Rule of Civil Procedure 56(f). For the reasons set forth below, the Court denies Waste Management's request for discovery in part and grants it in part.

### BACKGROUND

As part of a collective bargaining agreement with Teamsters Local Union Number 247 ("Local 247") covering the period of February 1, 2005 through January 31, 2009 (the "2005 CBA"), Waste Management agreed to make contributions to the Pension Fund on behalf of

1

certain covered employees. Waste Management also entered into a Participation Agreement that bound it to the terms of the Pension Fund's Trust Agreement. In December 2008, Waste Management entered into a new collective bargaining agreement (the "2008 CBA") with Local 247 that purported to abrogate Waste Management's obligation to make contributions to the Pension Fund.

The Trust Agreement created a Board of Trustees consisting of five employer representatives and five employee representatives. It provided that the Trustees would consider "[a]ll questions or controversies, of whatsoever character, arising in any manner between any parties or persons in connection with the Fund or the operation thereof," including those concerning "the construction of the language or meaning" of the Trust Agreement. The Trust Agreement also vested the Trustees with "discretionary and final authority" in making all "decisions construing plan documents of the Pension Fund."

In the July 2009 meeting of the Pension Fund's Trustees, the Trustees determined that the 2008 CBA did not terminate Waste Management's obligation to make contributions. When Waste Management refused to abide by the Trustees' decision, the Pension Fund brought this suit. The Pension Fund has since moved for summary judgment on the basis of the record created by the Trustees in making their determination. Waste Management now moves the Court to order discovery pursuant to Federal Rule of Civil Procedure 56(f), arguing that the Court should consider more than the Trustees' record in ruling on the motion for summary judgment. Waste Management seeks discovery relating to the Trustees' potential conflicts of interest in ruling on the dispute underlying the case, the Pension Fund's historical enforcement of the relevant provisions of the Trust Agreement and Participation Agreement, and information relevant to the Pensions Fund's damages claim.

## DISCUSSION

### I. Rule 56(f) standard of review

Rule 56(f) provides relief for a party opposing a motion for summary judgment that can show "for specified reasons" that it "cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f). If a court is persuaded by a Rule 56(f) motion, it may deny the motion for summary judgment, order a continuance to allow for further discovery, or "issue any other just order." *Id.* The rule "is intended as a safeguard against a premature grant of summary judgment." *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994). Thus, courts construe the rule liberally. *Id.* However, it "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Korf v. Ball State Univ.*, 726 F.3d 1222, 1230 (7th Cir. 1984) (internal quotation omitted). Thus, "[a] party invoking its protections must do so in good faith by affirmatively demonstrating *why he cannot respond to a movant's affidavits* ... and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Id.* (emphasis in original).

### II. Summary judgment standard of review

One issue underlying this discovery dispute is the standard of review that the Court must apply in ruling on the pending summary judgment motion. The parties dispute whether the Court should review the Trustees' construction of the language in the relevant agreements *de novo* or for an abuse of discretion. Waste Management takes the position that the Court should conduct *de novo* review, arguing that this more searching review would justify broader discovery. However, much of Waste Management's argument for discovery centers on the idea that the Trustees' decision was affected by a conflict of interest. If the Court conducts *de novo* review,

3

the factors affecting the Trustees' decision are irrelevant because the Court would be making its own determination based on the facts.

The Pension Fund, on the other hand, argues that the Court should review the record for an abuse of discretion by the Trustees, overturning their decision only if it was arbitrary and capricious. The Pension Fund argues that the standard of review is not really important, however, because the language of the Trust Agreement and Participation Agreement are clear and unambiguous and the Court need not look to extrinsic facts to determine whether the Trustees' decision was reasonable. This may be the case. However, in order to determine whether the language is clear and unambiguous, the Court would essentially have to address the merits of the summary judgment motion, which has not yet been fully briefed because of the instant discovery dispute. Thus, setting this question aside for the moment, the Court must determine whether the materials Waste Management seeks are even potentially relevant to the Court's review of the Trustees' determination.

In support of their arguments on the appropriate standard of review, the parties point the Court to *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S Ct. 948, 103 L. Ed. 2d 80 (1989) and its progeny. In *Firestone*, the Supreme Court held that in a case under § 1132(a)(1)(B) of ERISA, in which a beneficiary of an ERISA plan challenges a denial of benefits, courts should review the decision by the plan administrator or fiduciary to deny benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan." *Id.* at 115, 109 S. Ct. at 956. When the plan gives the fiduciary such discretion, courts review a denial of benefits under the arbitrary and capricious standard. *Tate v. Long Term Disability Plan for Salaried Employees of Champion Intern. Corp. # 506*, 545 F.3d 555, 559 (7th Cir. 2008)

4

(citing *Firestone*). The *Firestone* Court based its decision on ERISA's codification of certain trust law principles. 489 U.S. at 110-11, 109 S. Ct. at 954. Because § 1132(a)(1)(B) concerned the responsibilities of trustees as fiduciaries, the Court found guidance in the law of trusts, which similarly requires *de novo* review of trustee determinations as a general matter and deferential review in situations where trustees are given discretion by the trust instrument. *Id.* at 111-12, 109 S. Ct. at 954-55.

However, this is not a case involving a beneficiary's claim for benefits. Instead, it involves the Pension Fund's claim for contributions from an employer. Thus, Waste Management points out, this case does not arise in the same fiduciary context. The Trustees do not owe fiduciary duties to Waste Management, after all. *See* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"). The *Firestone* Court noted that it was only addressing actions brought under § 1132(a)(1)(B) and "express[ed] no view as to the appropriate standard of review for actions under other remedial provisions of ERISA." 489 U.S. at 108, 109 S. Ct. at 953. Therefore, the Court must determine whether the logic of the *Firestone* applies in the instant situation as well.

Waste Management provides scant case law on the subject, relying on opinions holding that suits seeking delinquent contributions involve legal relief. *See, e.g., Illinois State Painters Welfare Fund v. Brummet*, No. 03-CV-226-DRH, 2006 WL 83465, *2-*3 (S.D. Ill. Jan. 11, 2006). Waste Management argues that this distinguishes suits such as this one from benefit denial cases that involve equitable questions.

However, the question of whether the logic underlying *Firestone* applies in cases about allegedly delinquent contributions has been addressed directly in this district. In *Suburban Teamsters of Northern Illinois Welfare & Pensions Funds v. Moser*, 867 F. Supp. 665, 668-69

5

(N.D. Ill. 1994), the court was faced with a case analogous to the one at bar, in which the defendant employer argued that no deference should be given to the decision of the fund's trustees despite language in the underlying agreement giving the trustees the responsibility of resolving disputes arising under the agreement. The court found the language to be analogous to the type of language giving rise to the arbitrary and capricious standard of review in the *Firestone* line of cases. *Id.* at 668-70. The court noted that while no other court in the Seventh Circuit had applied such a standard in a case involving allegedly delinquent contributions, no other court had decided a case in which the underlying agreement delegated the authority to resolve disputes to the fund's trustees. *Id.* at 669.

The *Moser* court found only one case in which a court disregarded language in a collective bargaining agreement providing for the resolution of claims for delinquent contributions through grievance committees or arbitration. *Id.* In that case, *Central States Pension Fund v. Tank Transport*, 779 F. Supp. 947, 951 (N.D. Ill. 1991), the court addressed a CBA provision requiring that disputes concerning contributions be resolved by a grievance committee that did not contain trustee representatives. The court noted that the underlying purpose of ERISA is "to protect ... the interests of participants in employee benefit plans and their beneficiaries ... [by] establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for ... ready access to the federal courts." *Id.* (quoting 29 U.S.C. § 1001(b)). The court then found the deferral of disputes under a collective bargaining agreement to arbitration or a grievance committee to be inconsistent with this purpose, "especially where the trustee[s] of the fund are not represented on the grievance panel." *Id.*

Because the *Moser* court was faced with provisions which provided for dispute resolution by the fund trustees, the court found that the policy concerns raised in *Tank Transport* were not implicated. 867 F. Supp. at 670. The court found that the fund's interests were protected because the trustees were responsible for resolving disputes and that the employer's interests were protected because there were employer representatives on the board of trustees. *Id.*; *but see N.L.R.B. v. Amax Coal Co., a Div. of Amax, Inc.*, 453 U.S. 322, 334, 101 S. Ct. 2789, 69 L.Ed.2d 672 (1981) (holding that "an employee benefit fund trustee is a fiduciary whose duty to the trust beneficiaries must overcome any loyalty to the interest of the party that appointed him"). So, the court respected the terms of the agreement and applied the arbitrary and capricious standard in reviewing the decision of the trustees. 867 F. Supp. at 670. A few other district courts have followed the *Moser* opinion in coming to this conclusion. *See Wisc. UCFW Unions & Employers Health Plan v. Woodman's Food Market, Inc.*, 348 F. Supp. 2d 1005, 1008 (E.D. Wis. 2004) (citing *Moser*); *Langone v. USCO Dist. Servs., Inc.*, 389 F. Supp. 2d 91, 97 (D. Mass. 2005) (citing *Woodman's Food Market*); *Langone v. SE Metal Fabricators, Inc.*, 638 F. Supp. 2d 89, 93 (D. Mass. 2009) (citing *USCO Dist. Servs.*).

The Court finds the logic underlying these decisions persuasive. Although the principles of trust law that underlie the *Firestone* decision are not applicable in this case, Waste Management agreed to be bound by the terms of the Trust Agreement. That agreement authorizes the Board of Trustees to resolve disputes arising from the agreement and gives the Trustees discretion to construe terms. Waste Management's interests as an employer are represented on the Board of Trustees, which consists of both employer and employee representatives. Thus, the Court will respect the terms Waste Management agreed to, and will only overturn the Trustees' decision if it was arbitrary and capricious. This does not mean that

7

the Court will ignore case law directing the Court to respect the unambiguous meaning of contract terms. *See, e.g., Central States, Se. & Sw. Areas Pension Fund v. Kroger Co.*, 226 F.3d 903, 911 (7th Cir. 2000). Instead, the Court will uphold any construction of an ambiguous term by the Trustees so long as it is not "downright unreasonable." *Black v. Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009).

### III. *Glenn*'s impact on *Semien*

Having determined that an abuse of discretion standard of review is appropriate, the Court must still determine what information it may consider in conducting such a review. The Pension Fund argues that *Semien v. Life Insurance Co. of North America*, 436 F.3d 805, 815 (7th Cir. 2006), limits the Court's review to the record of the proceedings before the Trustees unless Waste Management can: (1) "identify a specific conflict of interest or instance of misconduct;" and (2) "make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the [Trustees'] determination." The *Semien* court recognized that this standard presented a "high bar" to discovery, and would allow it only under "exceptional circumstances." *Id.* Waste Management contends that in the wake of *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008), however, *Semien* is no longer good law.

In *Glenn*, a case involving a challenge to a benefit denial under § 1132(a)(1)(B), the Supreme Court elaborated on its holding in *Firestone* that "[i]f a benefit plan gives discretion to an administrator or fiduciary who *is operating under a conflict of interest*, that conflict must be *weighed as a factor* in determining whether there is an abuse of discretion." 128 S. Ct. at 2348 (emphasis in original; internal quotations omitted). The Court first held that a plan administrator that both evaluates and pays claims for benefits operates under the type of conflict of interest

8

described in *Firestone*. *Id.* This holding is not directly applicable to the case at bar since this is not a suit challenging a benefit denial. Instead, Waste Management argues that this case is analogous because, due to their status as fiduciaries, the Trustees operate under an inherent bias in favor of maximizing contributions to the Pension Fund. *See Robbins v. Pepsi-Cola Metro. Bottling Co.*, 636 F. Supp. 641, 673 (N.D. Ill. 1986).

The *Glenn* Court next addressed the issue of how such a conflict should be taken into account on judicial review of a discretionary benefit determination. 128 S. Ct. at 2350-52. The Court essentially reiterated the focus on the conflict as a "factor" in *Firestone*. *Id.* Thus, it avoided providing "detailed instructions," a "precise standard," or "talismanic words" to reviewing courts. *Id.* at 2352. Instead, the Court provided the following words as guidance:

> [A]ny one factor [in the analysis] will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* at 2351 (internal citations omitted).

The examples of information that the *Glenn* Court gives as potentially relevant to a determination of the weight to be given to a conflict, such as an administrator's history of bias or the steps the administrator took to reduce potential bias may often be absent from the record produced by an administrator or, in this case, the Board of Trustees. Indeed, the record may not

contain any information useful in evaluating a bias of conflict or weighing it against other factors. For this reason, Waste Management argues that, by underscoring the importance of this information, *Glenn* invalidated *Semien*, which places severe restrictions on the court's exposure to this information. The Pension Fund responds by noting that *Glenn* really did nothing more than reiterate the rule set forth in *Firestone*. Since *Semien* was decided in the wake of *Firestone*, the Pension Fund argues that *Glenn* has no effect on that precedent.

The Seventh Circuit has yet to address the question of whether *Semien* is still viable following *Glenn*. However, the district courts in this circuit have decided the issue a number of times, and have essentially split on the question. In most cases, the courts in this district have found that *Semien* still applies. *See, e.g., Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, 264 F.R.D. 394, 399 (N.D. Ill. 2009) (collecting cases), *vacated in part on other grounds*, No. 08 C 1093, 2009 WL 4730963 (N.D. Ill. Dec. 8, 2009). However, in *Parrilli v. Hartford Life & Accident Ins. Co.*, No. 09 C 769, 2009 U.S. Dist. LEXIS 100276, *4-*5 (N.D. Ill. Sep. 29, 2009), the court allowed discovery without going through the analysis required by *Semien*. Nonetheless, the *Parrilli* court based its ruling on specific allegations potentially indicative of a conflict, similar to those present in *Glenn*. *Id.* (focusing on plaintiff's allegations that his insurance plan refused to reconsider its determination that he was disabled despite an interim determination by the Social Security Administration that he was disabled). Indiana's district courts, on the other hand, have almost universally held that *Semien* no longer applies after *Glenn*. *See, e.g., Hall v. Life Ins. Co. of N. Amer.*, 265 F.R.D. 356, 362-63 (N.D. Ind. 2010) (collecting cases). As there is no controlling precedent on this precise question, this court must determine the effect of *Glenn* on *Semien*.

10

The *Semien* discovery rule was established in recognition of the discretionary review imposed by courts in benefit denial cases and the in light of ERISA's goal of "providing a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Semien*, 436 F.3d at 815-16. *Glenn* did not change either of these considerations, but merely emphasized the Supreme Court's concern with conflicts of interest as a factor to consider as previously noted in *Firestone*. 128 S. Ct. 2351. However, in doing so, the Court took note of certain types of information relevant to this consideration, such as an insurance company's history of bias, and any "active steps" an administrator has taken "to reduce potential bias and to promote accuracy," that may not typically be available absent some discovery. *Id.*

Weighing these considerations, the Court is not convinced that *Glenn* represents a complete invalidation of the discovery rule set forth in *Semien*. Thus, the Court will still apply the analysis adopted in *Semien* to determine whether to allow limited discovery. However, the Court does recognize the tension between the cases, and finds that, in light of *Glenn*, it is no longer appropriate to limit discovery to "exceptional circumstances." In other words, while the Court will still apply the *Semien* analysis, it will lower the bar for surviving that analysis somewhat.

The Court also agrees with another court that addressed this issue that "savvy plan administrators may already be taking the cue from the Supreme Court in *Glenn* and learning to incorporate in administrative records some evidence of their 'active steps to reduce potential bias and to promote accuracy.'" *Gessling v. Group Long Term Disability Plan for Employees of Sprint/United Mgmt. Co.*, No. 1:07-cv-0483-DFH-DML, 2008 WL 5070434, *1 n.1 (S.D. Ind. Nov. 26, 2008). Indeed, it seems like this information is probably readily available to plan

administrators and will seldom vary from case to case. For this reason, the Court orders the Pension Fund to produce any evidence of any such "active steps." The Court will consider the impact of these "active steps" in reviewing the Trustees' decision.

## IV. Applying *Semien*

Having concluded that a slightly relaxed *Semien* analysis applies, the Court must now determine whether Waste Management has met the factors laid out in *Semien*. As noted above, Waste Management must first identify a specific conflict of interest. Waste Management argues that the Pension Fund is inherently biased towards a finding that contributions are due because they have a duty to maintain funds for employee pensions.

The Pension Fund points to two cases finding that either the Pension fund or its sister Health and Welfare Fund do not operate under an inherent conflict of interest. *See Manny v. Central States, Se. & Sw. Areas Pension & Health & Welfare Funds*, 388 F.3d 241, 243 (7th Cir. 2004); *Klein v. Central States, Se. & Sw. Areas Health & Welfare Fund*, 364 Fed. Appx. 1, 5 (6th Cir. 2009). The *Manny* decision provides some guidance by noting the significance of a unanimous decision by a Board of Trustees that is split evenly between employee representatives and employer representatives. 388 F.3d at 243. In *Manny*, the Court found that there was no conflict of interest in part because all of the union representatives on the Board of Trustees ruled against the plaintiff beneficiary. *Id.* In the case at bar, the Trustees, including all of the employer representatives, were also unanimous in their decision that Waste Management owed contributions to the Pension Fund under the 2005 CBA. This does weigh against Waste Management's argument that the Board is inherently biased against employers. However, because both *Manny* and *Klein* involve challenges to benefit denials, rather than suits for delinquent contributions, they provide the Court with diminished guidance. As discussed above,

12

the Pension Fund does not owe employers the same duties it owes to beneficiaries. *See* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries"). Thus, ultimately the Trustees, whether employer representatives or not, owe a duty to the beneficiaries, not the employers. *See Amax Coal Co.*, 453 U.S. at 334, 101 S. Ct. 2789 ("an employee benefit fund trustee is a fiduciary whose duty to the trust beneficiaries must overcome any loyalty to the interest of the party that appointed him").

Waste Management also points to an additional factor weighing in favor of a finding that it has satisfied the requirements under *Semien*. One of the Trustees, Frank Gegare, is also a union representative who actively campaigned against an attempt by another entity, Waste Management of Wisconsin, to withdraw from the Pension Fund. During that effort, Mr. Gegare allegedly vowed to take his fight "nationwide." These allegations are somewhat unremarkable since Mr. Gegare is an employee representative, and they do not necessarily indicate anything about his ability to act in the interest of all beneficiaries when doing his duties as a Trustee, rather than in the interest of his union. Moreover, the allegations concern only one of the Trustees. Finally, the briefs do not clearly describe relationship between Waste Management of Wisconsin and Defendant in this case and the Court is therefore unable to understand the full impact of the allegations concerning Mr. Gegare's comments. Thus, the Court finds that these allegations alone do not satisfy even slightly relaxed *Semien* requirements. Nonetheless, taking Waste Management's allegations regarding the Pension Fund's inherent bias and Mr. Gegare's activity in related matters together, the Court finds that Waste Management has met its burden of identifying a specific conflict of interest.

Under *Semien*, Waste Management must also make a *prima facie* showing of good cause to believe that limited discovery will reveal a procedural defect in the plan administrator's decision. Waste Management actually argues that its allegations regarding Mr. Gegare help it satisfy this requirement, rather than the first. However, the Court fails to see how these allegations relate to the procedure underlying the Trustees' decision. Waste Management also relies on allegations that the Pension Fund has treated other employers differently under the 2005 CBA. It points out that in late December 2007 and early 2008, the United Parcel Service (UPS) negotiated a withdrawal from a CBA requiring contributions to the Pension Fund. As the Pension Fund notes, however, UPS was allowed to cease contributions after negotiation of a settlement that required a $6.1 billion payment. The Trustees' willingness to enter into a settlement agreement prior to an employer's withdrawal in order to secure a large lump sum payment and avoid litigation is not necessarily indicative of disparate treatment of Waste Management. Even under a relaxed *Semien* standard, the Court finds that Waste Management has not satisfied its burden. Thus, the Court denies Waste Management's request for additional discovery regarding a conflict of interest or disparate treatment.

## V. Discovery regarding damages

Finally, Waste Management moves the Court to compel discovery relevant to the Pension Fund's damages claim. The Pension Fund does not provide any argument on the subject. Thus, the Court grants Waste Management's request.

### *CONCLUSION*

For the above reasons, the Court DENIES Defendant's Rule 56(f) motion for discovery with regard to the Trustees' conflicts of interest and historic interpretation and enforcement of the relevant agreements. However, the Court orders the Plaintiffs to produce information

14

regarding steps it took to address any conflicts of interest. Additionally, the Court GRANTS Defendant's motion for discovery with regard to the Plaintiffs' damages claim.

IT IS SO ORDERED.

5/19/10
Dated

Hon. William J. Hibbler
United States District Court