MHN

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, as Trustee, Plaintiffs, v. WASTE MANAGEMENT OF MICHIGAN, INC., a Michigan corporation, Defendant. | No. 09 C 5216<br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund"), a multiemployer pension fund, and Howard McDougall, its trustee, brought this suit to enforce the requirements of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1145, claiming that Defendant Waste Management of Michigan ("Waste Management") breached an agreement to make contributions to the Pension Fund. Plaintiffs now move for summary judgment. For the reasons set forth below, the Court grants that motion as to liability. The Court denies the motion as to the amount of damages because the parties have since stipulated to a different amount, which the Court accepts.

### *BACKGROUND*

The following facts are undisputed unless otherwise noted. There are five documents that are relevant to this lawsuit, including two collective bargaining agreements, the Participation Agreement, the Trust Agreement, and the Pension Plan Document. First, Waste Management

1

entered into a collective bargaining agreement with Teamsters Local Union Number 247 ("Local 247") covering the period of February 1, 2005 through January 31, 2009 (the "2005 CBA"). (Pl. Rule 56.1(a)(3) Statement of Facts (hereinafter "Pl. St.") ¶¶ 8.) As part of that agreement, Waste Management agreed to make contributions to the Pension Fund on behalf of certain covered employees. (Pl. St. ¶ 9.) The 2005 CBA contained two provisions that are particularly relevant here. First, it stated,

> This Agreement shall be in full force and effective from February 1, 2005 to and including January 31, 2009, and shall continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other by Certified Mail at least sixty (60) days prior to the date of expiration.

(Pl. St. ¶ 13.) Second, the CBA stated,

> By execution of this Agreement, [Waste Management] authorizes the Employers Associations who are signatories to collective bargaining agreements with Teamsters Unions containing similar provisions, to enter into appropriate trust agreement [sic] necessary for the administration of such fund, and to designate the Employer Trustees under such Trust Agreements, hereby waiving all notice hereof and ratifying all actions already taken or to be taken by such Trustees within the scope of their authority.

(Pl. St. ¶ 12.)

Waste Management also entered into a Participation Agreement that set forth the terms "under which [Waste Management would] participate in the [Pension Fund]...in accordance with its collective bargaining agreement with the [Local 247]." (Pl. St. ¶ 15.) The Participation Agreement also required Waste Management to make contributions to the Pension Fund, (Pl. St. ¶ 17), and contained a number of other relevant provisions. First, paragraph 1 states, in part,

> [Local 247 and Waste Management] agree to be bound by the Trust Agreement(s) of the Pensions Fund and/or the Health and Welfare Fund, all rules and regulations presently in effect or

subsequently adopted by the Trustees of the Fund(s) and accept the respective Employer and Employee Trustees and their successors.

(Pl. St. ¶ 16.) Second, paragraph 6 states,

> When a new collective bargaining agreement is signed or [Waste Management] and [Local 247] agree to change the collective bargaining agreement, [Waste Management] shall promptly submit the entire agreement or modification to the Fund(s)' [sic] Contracts Department by certified mail (return receipt requested) at the address specified above. Any agreement or understanding which affects [Waste Management]'s contribution obligation which has not been submitted to the Fund(s) as required by this paragraph, shall not be binding on the Trustees and this Agreement and the written agreement(s) that has been submitted to the Fund(s) shall alone remain enforceable. The following agreements shall not be valid: a) an agreement that purports to retroactively eliminate or reduce [Waste Management]'s statutory or contractual duty to contribute to the Fund(s); b) an agreement that purports to prospectively reduce the contribution rate payable to the Pension Fund or c) an agreement that purports to prospectively eliminate the duty to contribute to the Pension Fund during the stated term of a collective bargaining agreement that has been accepted by the Pension Fund.

(Pl. St. ¶ 19.) Finally, paragraph 14 states,

> This Agreement may not be modified or terminated without the written consent of the Fund(s). To the extent there exists any conflict between any provisions of this Participation Agreement and any provisions of the collective bargaining agreement, this Participation Agreement shall control.

(Pl. St. ¶ 20.)

The Trust Agreement referenced in paragraph 1 of the Participation Agreement similarly required Waste Management to make contributions to the Pension Fund and contained a number of other relevant provisions. First, the Trust Agreement contained the following provision that mirrored the provisions quoted from the Participation Agreement above:

> Upon execution of each new or successive collective bargaining agreement...[Waste Management] shall promptly submit such

> contract by certified mail to the [Pension Fund's Contracts Department.]
>
> Any agreement or understanding between the parties that in any way alters or affects [Waste Management]'s contribution obligation as set forth in the collective bargaining agreement shall be submitted promptly to the Fund in the same manner as the collective bargaining agreement; any such agreement or understanding between the parties that has not been disclosed to the Fund as required by this paragraph shall not be binding on the Trustees and shall not affect the terms of the collective bargaining agreement which alone shall be enforceable.

(Pl. St. ¶ 22.) Second, the Trust Agreement provided that the Trustees would consider "[a]ll questions or controversies, of whatsoever character, arising in any manner between any parties or persons in connection with the Fund or the operation thereof," including those concerning "the construction of the language or meaning" of the Trust Agreement. (Pl. St. ¶ 26.) In a related provision, the Trust Agreement vested the Trustees with "discretionary and final authority" in making all "decisions construing plan documents of the Pension Fund." (Pl. St. ¶ 25.)

Finally, the Trust Agreement authorizes the Trustees to adopt a governing Pension Plan Document. (Pl. St. ¶ 27.) The Trustees adopted such a document, (Pl. St. ¶ 27), and it contains the requirements for participation in the Pension Fund and the terms, conditions, and limitations regarding the payment of pension benefits. (Pl. St. ¶ 28.) The Plan Document provides that "[a] Collective Bargaining Agreement shall be acceptable only if such agreement requires a Contributing Employer to make Employer Contributions…for the entire term of such Collective Bargaining Agreement." (Pl. St. ¶ 31.)

In 2008, Waste Management and Local 247 negotiated a new collective bargaining agreement (the "2008 CBA"). (Def. Rule 56.1(b)(3)(C) Statement of Add'l Facts (hereinafter "Def. Add'l St.") ¶ 9.) Two employees of the Pension Fund, Peter Priede and Donald Funk, attended at least one meeting between Waste Management and Local 247 late that year. (Pl.

Resp. to Def. Add'l St. (hereinafter "Pl. Resp.") ¶ 12.) However, the parties dispute whether Priede and Funk witnessed any substantive negotiations between the parties over withdrawal from the Pension Fund or any other issue. (Pl. Resp. ¶ 12.)

On December 16, 2008, Waste Management sent the Trustees a letter by certified mail stating that, effective December 14, 2008, Waste Management "permanently ceased its obligation to contribute to the [Pension Fund] for employees of the Company covered by the collective bargaining agreement between the Company and [Local 247]." (Pl. St. ¶ 35.) The letter stated that Waste Management's contribution obligation ceased "upon the ratification of a new collective bargaining agreement, with a term commencing December 14, 2008 and ending January 31, 2013," which "immediately supersede[d] the predecessor agreement, previously scheduled to expire on January 31, 2009." (Pl. St. ¶ 35.) The letter enclosed one article of the 2008 CBA that purported to eliminate Waste Management's obligation to contribute to the Pension Fund. (Pl. St. ¶ 36.) Then, on January 7, 2009, the Pension Fund received a complete signed copy of the 2008 CBA, which stated that it was "signed this 23'rd day of December, 2008, and effective December 14, 2008." (Pl. St. ¶ 37.)

The Pension Fund disputed Waste Management's claims that it no longer had an obligation to contribute to the fund. Thus, the issue was presented to the Trustees at their July 16, 2009 meeting in accordance with the dispute resolution provisions contained in the Trust Agreement. (Pl. St. ¶ 41.) At that meeting, the Trustees determined that under the 2005 CBA, the Participation Agreement, the Trust Agreement, and the Plan Document, the 2008 CBA did not terminate Waste Management's duty to contribute to the Pension Fund, and that contributions were therefore due through January 31, 2009. (Pl. St. ¶ 42.)

5

Waste Management did not pay contributions (or any applicable interest thereon) to the Fund for the period of December 14, 2008 through January 31, 2009. (Pl. St. ¶ 51.)

*DISCUSSION*

I. **Standard of review**

Prior to filing its response brief regarding Plaintiffs' motion for summary judgment, Waste Management filed a discovery motion. In ruling on that motion, the Court found it necessary to resolve the issue of what standard of review the Court should apply in construing the terms of the various relevant documents at the summary judgment stage. *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich.*, No. 09 C 5216, --- F.R.D. ----, 2010 WL 2035709, *2 (N.D. Ill. May 19, 2010). Waste Management took the position that the Court should conduct *de novo* review, arguing that this more searching review would justify broader discovery. *Id.* Plaintiffs, on the other hand, argued that the Court should review the record for an abuse of discretion by the Trustees, overturning their decision only if it was arbitrary and capricious. *Id.* Unexplainably, Waste Management seems to believe that the Court should entertain argument on this issue once again in addressing the motion for summary judgment. However, the Court already decided the issue. *Id.* The Court held that it gives no deference to the Trustees in the case of unambiguous contract terms. *Id.* at *4 (citing *Central States, Se. & Sw. Areas Pension Fund v. Kroger Co.*, 226 F.3d 903, 911 (7th Cir. 2000)). But, in the case of ambiguity, the Court will apply an arbitrary and capricious standard of review, upholding the Trustees' construction so long as it is not "downright unreasonable." *Id.* (citing *Black v. Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009)). As part of that analysis, however, the Court will consider whether the Trustees were operating under a conflict of interest and, if so,

6

will weigh it as a factor in considering whether they abused their discretion. *Metropolitan Life Insurance Co. v. Glenn,* 554 U.S. 105, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008).

## II. Unambiguous terms

Plaintiffs argue first that the various documents detailed above unambiguously barred Waste Management from ceasing or reducing contributions to the Pension Fund prior to January 31, 2009. The Court agrees for a few simple reasons. First, the 2005 CBA, and the corresponding obligation to contribute, was not set to expire until that date. Second, while the Participation Agreement did provide for the possibility that Waste Management and Local 247 would modify the 2005 CBA or enter into a new collective bargaining agreement prior to that expiration date, it rendered invalid any attempt to do so that purported to eliminate Waste Management's duty to contribute to the Funds either retroactively or prospectively. Thus, the 2008 CBA, which purported to eliminate that duty both retroactively and prospectively, was invalid under the Participation Agreement.

Waste Management contends that these provisions are ambiguous for two reasons. First, the company focuses on the term "prospectively" in paragraph 6 of the Participation Agreement. Waste Management argues that the 2008 CBA is not rendered invalid by that provision because it did not "purport[] to *prospectively* eliminate the duty to contribute to the Pension Fund during the stated term of a collective bargaining agreement that has been accepted by the Pension Fund." Waste Management bases its argument on the notion that the 2008 CBA's purported elimination of the duty to contribute was to take effect immediately. The Court finds that this is not a reasonable reading of the Participation Agreement. The 2008 CBA, signed December 23, 2008, did not somehow eliminate only Waste Management's present duty to contribute, but also purported to eliminate that duty going back to December 14, 2008 and to eliminate any duty

7

going forward. Thus, the agreement was invalid under the Participation Agreement because it attempted to retroactively and prospectively eliminate Waste Management's contribution obligation.

Waste Management's second argument is that the 2005 CBA allowed the parties to change or revise the agreement provided that notice was provided at least sixty days prior to January 31, 2009. Waste Management argues that because Priede and Funk were present for negotiations between Waste Management and Local 247 over the 2008 CBA that included discussion of withdrawal from the Pension Fund, the Pension Fund had adequate notice. Thus, Waste Management argues, they properly ceased contributing to the Pension Fund when they entered into the 2008 CBA.

As noted above, the parties dispute whether Priede and Funk actually witnessed substantive negotiations over the issue of Waste Management's ongoing duty to contribute to the Pension Fund (or any other issue, for that matter). However, even assuming that Waste Management is correct about what they witnessed, the company's argument fails for a number of reasons. First, the company does not offer a reasonable interpretation of the language of the 2005 CBA. The relevant provision of the 2005 CBA stated as follows:

> This Agreement shall be in full force and effective from February 1, 2005 to and including January 31, 2009, and shall continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other by Certified Mail at least sixty (60) days prior to the date of expiration.

The Court finds that the provision unambiguously provided either party with the opportunity to unilaterally cancel the automatic annual renewal of the 2005 CBA (that would otherwise have taken place beginning February 1, 2009), by providing notice to the other party at least sixty days prior to the applicable expiration date (in this case, January 31, 2009). The provision did not

provide the opportunity to unilaterally opt out of the contract at any point prior to the last sixty days of the agreement. Such a construction would be absurd if for no other reason than that it would allow either party to opt out of the contract at any time during the four-year term of the agreement except for the last sixty days. But, it is also not a grammatically logical reading of the provision because the cancellation provision very clearly modifies the clause that provides that the agreement "shall continue in full force and effect from year to year thereafter," which is separated from the first clause of the provision by a comma.

However, even if the Court were to hold that Waste Management's construction of the provision is also reasonable, and thus that the cancellation provision contains some ambiguity, the Participation Agreement would still bar Waste Management from entering into a new agreement such as the 2008 CBA, which purported to eliminate Waste Management's contribution obligation.

Finally, even if the Court were to find not only that the cancellation provision of the 2005 CBA was ambiguous, but also that the ambiguity was material, Waste Management still would not prevail in this case. As noted above, in the case of such a material ambiguity, the Court must determine whether the Trustees acted in an arbitrary and capricious manner in construing the provision as they did. Waste Management is correct that the Court must consider any conflict of interest as a factor in making that determination. If the Court had enough evidence that a conflict of interest affected the Trustees' decision, the Court might even find such a conflict of interest to be "of great importance" in determining whether the Trustees abused their discretion. *See Glenn*, 128 S.Ct. at 2351. In its previous decision, the Court found that Waste Management had identified a specific conflict of interest in this case. *Waste Mgmt. of Mich.*, 2010 WL 2035709 at *7. However, the Court need not engage in a detailed analysis of that conflict or its effect on the

Trustees' decision because the construction of the cancellation provision offered by the Trustees is surely not arbitrary, but eminently reasonable for the reasons given above.

## *CONCLUSION*

For the above reasons, the Court GRANTS Plaintiffs' motion for summary judgment with regard to liability. As previously noted, the Court accepts the damages amount offered via joint stipulation in an exhibit attached to Defendant's response brief. Thus, the Court enters judgment in favor of Plaintiffs and against Defendant and awards Plaintiffs $30,447.00 in unpaid contributions, plus interest based upon the rate in the Trust Agreement, and $6,089.40 in liquidated damages.

IT IS SO ORDERED.

9/2/10
Dated

Hon. William J. Hibbler
United States District Court